CASEY H. KEMPNER (SBN: 272149)
E-Mail: CKempner@pandpimports.com
JIAXIAO ZHANG (SBN: 317927)
JZhang@pandpimports.com
**P&P IMPORTS LLC**
17352 Derian Ave
Irvine, CA 92614
Telephone: (949) 734-6892

MARC E. HANKIN (SBN: 170505)
E-Mail: Marc@hpl.law
**HANKIN PATENT LAW,**
A Professional Corporation
11414 Thurston Cir
Los Angeles, CA 90049
Tel: (310) 979-3600

Attorneys for PLAINTIFF and COUNTERDEFENDANT,
**P&P Imports LLC**

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

P&P Imports LLC,

Plaintiff

v.

Vevor Store LLC; Vevor Technology LLC; Vevor Technology Ltd.; Vevor Corporation; Vevor Equipment Inc.; Sanven Corporation; Sanven Technology Ltd.; Shanghai MuXinMuYe Youxiangongsi; Shanghai LEILEI E-Commerce Co., Ltd.; Shanghai SIJIE E-Commerce Co., Ltd.; Bozhou LEIKEYOU Technology Co., Ltd.; DOES 1 through 10, inclusive,

Defendants.

Vevor Store LLC, Vevor Technology LLC, Sanven Corporation and Sanven Technology Limited;

CounterPlaintiffs,

v.

P&P Imports LLC;

CounterDefendant.

CASE No. 8:25-cv-02494-DOC-DFM

**OPPOSITION TO DEFENDANTS VEVOR STORE LLC, ET AL.'S MOTION TO DISMISS CERTAIN CLAIMS FOR PATENT INFRINGEMENT PURSUANT TO FED. R. CIV. P. 12(B)(1)**

## Table of Contents


I. INTRODUCTION .......... 3

II. ARGUMENT .......... 5

A. Defendants Ignore Clear Signs That the Patents are Owned by Plaintiff .......... 5

B. Documents Containing "Hereby Assigns" Provisions Effected Automatic Transfer of Legal Title to Plaintiff Long Before this Lawsuit Was Filed .......... 7

C. The Subsequent Confirmatory Assignments Did Not Create Retroactive Standing; They Merely Recorded an Existing Legal Reality .......... 9

D. USPTO Recordation Practices Do Not Undo the Automatic Operation of Law .......... 10

E. Defendants' Bald Attempt to End Run Discovery Practice Should Not be Rewarded .......... 12

III. CONCLUSION .......... 13

# TABLE OF AUTHORITIES

## Cases

*A123 Sys., Inc. v. Hydro-Quebec*, 626 F.3d 1213, 1218 (Fed. Cir. 2010) .................... 13

*Abraxis Bioscience, Inc. v. Navinta, LLC*, 625 F.3d 1359 (Fed. Cir. 2010) ................ 12

*Advanced Video Technologies LLC v. HTC Corp.*, 879 F.3d 1314 (Fed. Cir. 2018) ..... 7

*Beech Aircraft Corp. v. EDO Corp.*, 900 F.2d, 1237 (Fed. Cir. 1993) .......................... 9

*Board of Trustees of the Leland Stanford Junior University v. Roche Molecular Systems, Inc.*, 563 U.S. 776 (2011). .............................................................. 7, 8, 11

*DDB Techs., LLC v. MLB Advanced Media, LP*, 517 F.3d 1284, 1289–90 (Fed. Cir. 2008). ....................................................................................................... 7, 9

*Enzo APA & Son, Inc. v. Geothermal Products*, 134 F.3d 1090 (Fed. Cir. 1998) ....... 12

*FilmTec Corp. v. Allied-Signal, Inc.*, 939 F.2d 1568, 1572 (Fed. Cir. 1991) ...... 7, 8, 11

*Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004) ................................................ 10

*Lexmark International Inc. v. Static Control Components Inc.*, 572 U.S. 118, 128 n.4 (2014) ........................................................................................................... 4

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1235-1236 (Fed. Cir. 2019) .................................................................................... 4, 13

*McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) ....................................... 6

*Morrow v. Microsoft Corp.*, 499 F.3d 1332 (Fed. Cir. 2007) ........................................ 9

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) .......................... 6

*Schwendimann v. Arkwright Advanced Coating, Inc.*, 959 F.3d 1065, 1072–74 (Fed. Cir. 2020) ....................................................................................................... 13

*Seoul Laser Dieboard Systems Co. v. Serviform, S.r.l.*, 957 F. Supp. 2d 1189 (S.D. Cal. 2013) ....................................................................................................... 10

*SiRF Technology, Inc. v. International Trade Commission*, 601 F.3d 1319, 1327–28 (Fed. Cir. 2010) ........................................................................................... 14

*Waterman v Mackenzie*, 138 U.S. 252, 256 (1891) ............................................... 13, 14

## Statutes

35 U.S.C. § 261 .......... 14

## Other Authorities

USPTO Manual of Patent Examining Procedure ("MPEP"), Section 302 .......... 14

## Rules

Fed R. Civ. P. 33 .......... 6

Fed. R. Civ. P. 12(b)(1) .......... 4

Fed. R. Evid. 201(b)(2) .......... 10

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE:**

Plaintiff P&P IMPORTS LLC ("Plaintiff") opposes Defendants' Motion to Dismiss Certain Claims for Patent Infringement Pursuant to Fed. R. Civ. P. 12(b)(1) (Dkt. 101, "Motion to Dismiss") for the following reasons:

Defendants' Motion to Dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) is not only procedurally improper, but also rests entirely on a flawed and incorrect assumption despite clear evidence to the contrary: that Plaintiff lacked legal title to three of the Asserted Patents in this case (U.S. Design Patent Nos. D1,051,263 (the "'263 Patent); D1,048,254 (the "'254 Patent); and D1,012,214 (the "'214 Patent) (collectively "challenged patents-in-suit") at the time the Complaint was filed and attempted to retroactively manufacture standing via a subsequent confirmatory *nunc pro tunc* assignment. Defendants are mistaken.

Despite answering Plaintiff's First Amended Complaint, and after obtaining additional and new lead counsel, Defendants seek to dismiss certain claims due to a spurious lack of assignment claim. However, under Federal Circuit precedent, even statutory standing defects do not implicate the courts' subject matter jurisdiction. *Lexmark International Inc. v. Static Control Components Inc.*, 572 U.S. 118, 128 n.4 (2014) ("We have on occasion referred to [whether a plaintiff may bring suit under a certain statute] as 'statutory standing' and treated it as effectively jurisdictional . . . That label is an improvement over the language of 'prudential standing,' since it correctly places the focus on the statute. But it, too, is mis-leading, since 'the absence of a valid (as opposed to arguable) cause of action does not implicate subject matter jurisdiction, *i.e.*, the court's statutory or constitutional *power* to adjudicate the case.'"); *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1235-1236 (Fed. Cir. 2019) ("We therefore firmly bring ourselves into accord with *Lexmark* and our sister circuits by concluding that whether a party possesses all substantial rights in

a patent does not implicate standing or subject-matter jurisdiction."). Standing is proper in this case due to Plaintiff's injuries from Defendants' infringing activities that violate Plaintiff's patent, copyright, and trade dress intellectual property rights.

Furthermore, as explained to Defendants in the Parties' L.R. 37-1 conference: Defendants' allegations are incorrect and demonstrate a lack of diligence and understanding of the relevant legal tenets; recordation of assignments in the USPTO is helpful but not required; Plaintiff possessed full, exclusive legal title to the Asserted Patents and challenged patents-in-suit long before this action commenced, e.g., through execution of documents containing the appropriate "hereby assign" language accepted by precedent; and Defendants have no right to attempt to bypass the Court's procedures and discovery process by improperly using 12(b)(1) motion practice as a way to circumvent the discovery process and demand employment materials without complying with the rules of Civil Procedure and wasting Plaintiff and the Court's resources on a procedurally improper and factually unsupported motion.

Years before the Complaint was filed in this case, the inventors each executed valid, binding employment agreement(s) containing an explicit, present-tense conveyance of future inventions to Plaintiff of: "I hereby assign." Kempner Decl. ¶ 10. Under controlling Federal Circuit and Supreme Court precedent, this language effected an automatic transfer of legal title to Plaintiff by operation of law the exact moment the invention was conceived.

Any subsequent recordation with the United States Patent and Trademark Office (USPTO) did not "cure" a jurisdictional defect; rather, it documented and specifically referenced the chain of title that was already complete. Because Article III standing was securely held by Plaintiff on Day One of this litigation, Defendants' reliance on cases involving entirely retroactive contracts is completely inapposite. The Court should deny Defendants' motion.

## I. INTRODUCTION

Defendants' belated motion to dismiss under 12(b)(1), filed *after* each party's Answer to the First Amended Complaint is yet another exceptional act by Defendants to avoid answering for their infringement. For context, among the discovery issues Plaintiff has been battling through, Defendants *are refusing to answer any interrogatory* served by Plaintiff, forcing Plaintiff to file a motion to compel.[1] Defendants' complete disregard for the discovery process is also shown here—filing an improper motion, under the incorrect procedure, ignoring the public facing documents, and choosing to notserve a single request themselves—even for the assignment documents Defendants claim would resolve their questions. Plaintiff is disappointed but unfortunately not surprised by Defendants' tactics.

A motion to dismiss for lack of standing under Federal Rule of Civil Procedure 12(b)(1) may be framed as either a facial or a factual attack. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Where a defendant challenges standing based on extrinsic evidence regarding a patent's chain of title, the motion is treated as a factual attack.

In a factual attack, the court may look beyond the pleadings to resolve jurisdictional disputes. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) ("[W]hen considering a motion to dismiss pursuant to Rule 12(b)(1) the district court is not restricted to the face of the pleadings, but may review any evidence, such as

---

[1] Plaintiff served certain Defendants with a First Set of Interrogatories numbering 19, 20, or 21 interrogatories, less than the 25 permitted under Fed R. Civ. P. 33. After a month, each Defendant provided an identical single boilerplate paragraph as their Objection, claiming that the interrogatories served exceeded 25. Defendants attempted to weaponize L.R. 37-1 to delay the Parties' conference (and submission to Special Master Miller) on the issue, stood on their numerosity objection and refused to explain why or how any interrogatory resulted in more than the permitted number served, and still refused to answer a single interrogatory. The Parties have submitted briefing to Special Master Miller and the issue is scheduled for hearing on September 29, 2026.

affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction."). However, the Federal Circuit has long made clear that the question of whether a contract effects a present assignment of patent rights is a matter of law. *DDB Techs., LLC v. MLB Advanced Media, LP*, 517 F.3d 1284, 1289–90 (Fed. Cir. 2008). If the underlying contract contains a present assignment of future patent rights, the contract operates to transfer legal title automatically, defeating any factual attack on standing at the pleading stage. *Id.*

The language of a document matters, and no less an authority than the Supreme Court has affirmed the Federal Circuit that a contract stating an inventor "hereby assigns" their rights operates as an immediate transfer of expectations. *Board of Trustees of the Leland Stanford Junior University v. Roche Molecular Systems, Inc.*, 563 U.S. 776 (2011). Once the invention comes into being, legal title vests automatically in the assignee by operation of law, completely bypassing the need for a subsequent assignment deed to establish initial standing. *See also FilmTec Corp. v. Allied-Signal, Inc.*, 939 F.2d 1568, 1572 (Fed. Cir. 1991) (establishing that where an employment agreement uses words of a present assignment of future inventions, "hereby assigns", no further act is required such that once the invention is conceived, the legal title seamlessly and immediately vests in the employer.). *Compare Advanced Video Technologies LLC v. HTC Corp.*, 879 F.3d 1314 (Fed. Cir. 2018) (reiterating that present tense words of execution "hereby assign" creates an immediate transfer, whereas "will assign" is merely a future promise). Notably, during the Parties' meet and confer, the Defendants did not dispute that "hereby assign" language creates an immediate transfer. Kempner Decl. ¶ 11. Rather, and despite additional time after the Parties' conference to review the publicly available assignment materials, Defendants' counsel refuse to acknowledge that the publicly recorded assignments are sufficient and brought this improper motion to circumvent the discovery process.

## II. ARGUMENT

### A. Defendants Ignore Clear Signs That the Patents are Owned by Plaintiff

Defendants' theory is entirely misplaced. Plaintiff did not first acquire ownership through the later recorded assignment. The inventors' earlier employment agreements already assigned their patent rights to Plaintiff using present-tense "hereby assign" language—the language Federal Circuit precedent recognizes as effecting an immediate transfer of rights. Kempner Decl. ¶ 9; *See Roche*; *FilmTec* (assignment of an expectant interest). The subsequently recorded assignment expressly identifies and acknowledges those preexisting agreements, stating that the inventions were made within the course and scope of the inventors' employment and that the assignment was made in accordance with such "employment and other agreements and company policies entered into by ASSIGNORS" before the relevant filing dates. *See* Dkt. 101-2 at 11–15 (for U.S. Design Patent application 29/898,769, which issued as the as the '263 Patent); Dkt. 101-2 at 17–21 (for U.S. Design Patent application 29/781,173, which issued as the '254 Patent); Dkt. 101-2 at 23–27 (for U.S. Design Patent application 29/783,479, which issued as the '214 Patent). The instrument then reiterates the transfer of "100%" of the inventors' "right, title, and interest," including rights in divisions, continuations, continuations-in-part, and substitute applications. *Id.* Thus, the later instrument did not create ownership retroactively or cure a defect in title; it documented and confirmed rights Plaintiff had already acquired under the earlier employment agreements. The patent records themselves are consistent with that history: Plaintiff is identified as the applicant, and the inventors are Plaintiff's founders and employees. *See* Dkts. 1-1 and 22-1 at 77 ('263 Patent); Dkts. 1-1 and 22-1 at 86 ('254 Patent); Dkts. 1-1 and 22-1 at 122 ('214 Patent); Kempner Decl. ¶ 8. Defendants were specifically directed to this language in the assignment and explained the basis during the parties' conference, yet their Motion proceeds from the contrary premise without diligence, blindly claiming that Plaintiff obtained ownership only later while ignoring the available facts.

Defendants' own Motion to Dismiss acknowledges "[t]he '263 Patent [sic] lists Peter H. Engler, Peter L. Tanoury, and Hyun Ki "Daniel" Yoon as co-inventors. The '254 Patent [sic] lists Peter Engler, Peter Tanoury, and Sean Kyne as co-inventors. The '214 Patent [sic] lists Peter Engler, Peter Tanoury, and Willis Santamaria as co-inventors." Dkt. 101-1 at 1. The cover page or "face" of each of the Asserted Patents and challenged patents-in-suit confirms that Plaintiff applied for each patent, that the inventors are Plaintiff's employees and founders, and that Plaintiff's ownership rights existed before this action was filed. *See* Dkts. 1-1 and 22-1 at 77 ('263 Patent); Dkts. 1-1 and 22-1 at 86 ('254 Patent); Dkts. 1-1 and 22-1 at 122 ('214 Patent); Kempner Decl. ¶ 8. At least for these reasons, and through employment of the inventors, Plaintiff has from the inception of the inventions held ownership of the Asserted Patents.[2] Accordingly, Plaintiff P&P Imports LLC clearly falls within the first category of plaintiffs having standing referenced in Defendants' cited case *Morrow v. Microsoft Corp.*, 499 F.3d 1332 (Fed. Cir. 2007): "those that can sue in their own name alone."

Defendants also reference, but would have the Court ignore, the assignments recorded in the USPTO confirming Plaintiff's ownership of the patents-at-issue, the "hereby assign" language held under *Roche* and *FilmTec* to be complete and immediately effective assignment language, and the references therein to the underlying agreements. *See* Dkt. 101-2 at 11–15; Dkt. 101-2 at 17–21; Dkt. 101-2 at 23–28; Kempner Decl. ¶¶ 9–10. The existence of this evidence of Plaintiff's ownership of the patents was also discussed during the Parties' conference. Kempner Decl. ¶¶ 4–11. Under Federal Circuit precedent, *e.g.*, *DDB Techs.*, the inquiry should end here.

---

[2] The scenario here is easily distinguished from Defendants' cited *Beech Aircraft Corp. v. EDO Corp.*, 900 F.2d, 1237 (Fed. Cir. 1993) (Plaintiff assumes Defendants reference 990 F.2d 1237), of a contract dispute between two contracting parties who were also going through related litigation and interference claims with successors in interest claims issues.

Plaintiff has provided sufficient information to satisfy the inquiry at this stage and to continue the case. *See Seoul Laser Dieboard Systems Co. v. Serviform, S.r.l.*, 957 F. Supp. 2d 1189 (S.D. Cal. 2013) (denying a dismissal challenge regarding whether patents-in-suit were co-owned or otherwise subject to assignment, holding that the plaintiff's statements regarding complete ownership and declarations explaining its corporate structure and intent were sufficient to satisfy standing and survive the pleading stage). The situation is simpler still here. The inventors founded and/or were and have been employed by Plaintiff and invented the relevant inventions in the course of their employment and subject to their employment agreements, as identified and explained by the *nunc pro tunc* assignments recorded in the USPTO. Dkt. 101-2 at 11–15; Dkt. 101-2 at 17–21; Dkt. 101-2 at 23–28; Kempner Decl. ¶¶ 7–10.

Plaintiff also requests the Court give judicial notice to the USPTO assignment records confirming Plaintiff's ownership of the Asserted Patents and challenged patents-in-suit. Judicial notice is proper at least because the USPTO documents are public records "capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned." Fed. R. Evid. 201(b)(2); *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004); *Seoul Laser Dieboard Sys. Co. v. Serviform, S.r.l.*, 957 F. Supp. 2d 1189 (S.D. Cal. 2013).

**B. Documents Containing "Hereby Assigns" Provisions Effected Automatic Transfer of Legal Title to Plaintiff Long Before this Lawsuit Was Filed**

The foundational flaw in Defendants' motion is abject failure to read the recorded assignment and acknowledge that the patents were owned by Plaintiff "at least as early as the filing date . . . and consistent with employment and other agreements and company policies entered into by ASSIGNORS and inuring to the benefit of Assignee prior to the filing date for each one of the Patent Applications . . .". Rather, Defendants seem to latch on to the use of *nunc pro tunc* assignment recordation as inherently improper without analyzing any of the recorded assignment language and its identified

underlying basis. The Supreme Court and the Federal Circuit have repeatedly affirmed that when an employment agreement or initial formal agreement contains present-tense words of conveyance—specifically the phrase "hereby assign"—legal title to any future invention transfers to the assignee automatically by operation of law immediately upon conception of that invention. *Bd. of Trs. of the Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 563 U.S. 776, 786 (2011) (noting that a contract stating an inventor "agree[s] to assign" creates a mere equitable boundary, whereas "hereby assign" creates an immediate transfer of expectations); *FilmTec Corp. v. Allied-Signal, Inc.*, 939 F.2d 1568, 1572 (Fed. Cir. 1991). The assignment documents identify this language and the basis thereof: "hereby assign to Assignee 100% of their right, title, and interest… at least as early as the filing date . . . and ***consistent with employment and other agreements*** *and company policies entered into by ASSIGNORS and inuring to the benefit of Assignee* ***prior to the filing date*** for each one of the Patent Applications . . .". Assignment (emphases added). Dkt. 101-2 at 13; Dkt. 101-2 at 19; Dkt. 101-2 at 25.

As the Federal Circuit explained in *FilmTec*, where an agreement contains a present assignment of future inventions, "no further act has to be performed" by either party to vest title. *Id.* The moment the invention comes into being, the legal title seamlessly and instantly vests in the employer.

Here, the operative employment documents executed by the inventors state that the inventor "*hereby assigns*" all rights, title, and interest in any future inventions to Plaintiff. Kempner Decl. ¶ 10. Consequently, when the inventions underlying the patents-in-suit were conceived, legal title vested automatically in Plaintiff. Plaintiff possessed full, unassailable legal title on the day the Complaint was filed, securely satisfying the requirements for Article III constitutional standing.

**C. The Subsequent Confirmatory Assignments Did Not Create Retroactive Standing; They Merely Recorded an Existing Legal Reality**

Defendants seek to rely heavily on *Abraxis Bioscience, Inc. v. Navinta, LLC*, 625 F.3d 1359 (Fed. Cir. 2010) and *Enzo APA & Son, Inc. v. Geothermal Products*, 134 F.3d 1090 (Fed. Cir. 1998)[3] to argue that *nunc pro tunc* or *retroactive* assignments executed after a complaint is filed cannot retroactively confer Article III standing. Defendants' reliance on this line of authority is completely misplaced.

In *Abraxis*, the plaintiff possessed no written agreement transferring legal title at the time the complaint was filed; the contract in that case was a mere promise to transfer title in the future ("will assign"). *Abraxis*, 625 F.3d at 1366. Because no legal title existed at filing, the plaintiff in *Abraxis* attempted to use a brand-new, post-complaint retroactive assignment to manufacture standing, which the Federal Circuit properly rejected. *Id.* There are simply no agreements based on "will assign" language at issue here, rather Plaintiff's standing arises directly from the pre-existing employment documents containing the recognized "hereby assign" language.

Under controlling Federal Circuit law, where an original contract already achieved a valid assignment, any subsequent recordation of an assignment or a *nunc pro tunc* document does not legally grant or "create" new rights. Rather, it serves as a mere administrative confirmation of a transfer that had already fully concluded by operation of law. *DDB Techs.*, 517 F.3d at 1290 (holding that a post-filing confirmatory assignment merely confirms the pre-existing legal reality established by a prior "hereby assigns" agreement). That is precisely the situation here.

Furthermore, the Federal Circuit has clarified that the formalization of a pre-existing, valid written assignment instrument operates *nunc pro tunc* to seamlessly

---

[3] Plaintiff assumes the referenced case is *Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090 (Fed. Cir. 1998).

maintain Article III standing from inception. *Schwendimann v. Arkwright Advanced Coating, Inc.*, 959 F.3d 1065, 1072–74 (Fed. Cir. 2020) (denying a motion to dismiss for lack of standing where a pre-existing written instrument was clarified by subsequent post-filing documents). And just in case Defendants argue that an assignment must be some "specially named" document rather than an employment agreement, it has been long held that does not matter. See *Waterman v Mackenzie*, 138 U.S. 252, 256 (1891) (patent assignment "does not depend upon the name by which it calls itself"). "[L]abels … do not control" . *A123 Sys., Inc. v. Hydro-Quebec*, 626 F.3d 1213, 1218 (Fed. Cir. 2010).[4] Rather, it is the "substance" of the written agreement "rather than formalities or magic words." *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1229 (Fed. Cir. 2019).

Because Plaintiff's chain of title was contractually and legally complete prior to filing the Complaint, the later confirmatory *nunc pro tunc* documents simply recorded an assignment that had already occurred. *See* Kempner Decl. ¶¶ 9–10.

**D. USPTO Recordation Practices Do Not Undo the Automatic Operation of Law**

Defendants' persistence and emphasis on the timeline of USPTO assignment data is a red herring, easily identified by the blatant ignoring of the prior agreements

---

[4] Here, Defendants have not even gone as far as appellant A123 Systems, who at least included a footnote in their "brief stating equivocally that '[i]f the Court deems further review of the agreement to be relevant to this motion, A123 *would* respectfully request prompt discovery of it.'" *A123 Sys.*, 626 F.3d 1213, 1218 (Fed. Cir. 2010) (emphases in original). The Federal Circuit found that "[b]ecause [moving party A123] never requested discovery of the Agreement then or at any time prior to the district court's ruling on [the moving party's] motion . . . its argument that the district court erred in not permitting discovery is waived." Similarly, Defendants' failure to seek proper discovery of any agreements (even when they contemplated motion practice) is entirely a situation of their own creation.

identified as the basis in the recorded assignment documents. It is a long-standing rule that recording a patent assignment in the USPTO is not required. Put differently, an unrecorded assignment of a patent still transfers title as between the parties, and recording provisions exist solely to protect subsequent bona fide purchasers who otherwise lack notice. *Waterman v. Mackenzie*, 138 U.S. 252 (1891). Defendants are not such purchasers and still were given full notice of the patents' ownership. *See also* 35 U.S.C. § 261, "[s]ubject to the provisions of this title, patents shall have the attributes of personal property. The Patent and Trademark Office shall maintain a register of interests in patents and applications for patents and shall record any document related thereto *upon request*, and may require a fee therefor." (emphases added). The Parties are also not impacted by an Executive Order requiring recording of all *U.S. Government interests* in patents and patent applications. *See* USPTO Manual of Patent Examining Procedure ("MPEP"), Section 302.[5]

Although not required, "the recording of an assignment with the PTO creates a presumption of validity as to the assignment and places the burden to rebut such a showing on one challenging the assignment." *SiRF Technology, Inc. v. International Trade Commission*, 601 F.3d 1319, 1327–28 (Fed. Cir. 2010). Thus, the recorded assignments to Plaintiff have a presumption of validity, and as challengers to Plaintiff's ownership ***it is Defendants' burden to rebut their validity***. Defendants have not met this burden.

Indeed, there are many parallels between the situation here of Plaintiff's ownership as supported by the formal *nunc pro tunc* assignments and underlying

---

[5] MPEP 302 mandates only that "Executive Order 9424 . . . requires the several departments and other executive agencies of the Government, including Government-owned or Government-controlled corporations, to forward promptly to the Director for recording all licenses, assignments, or other interest of the Government in or under patents or patent applications."

employment agreement documents and the facts in *SiRF* and other precedential cases in which Plaintiff's ownership and standing were recognized. A delay in recording a formal assignment with the USPTO does not dissolve or undo the automatic legal transfer effectuated by a valid "hereby assign" clause in an employment agreement. Because the substantive legal title passed automatically upon conception, any alleged deficiency or delay in the public registry is an administrative matter that cannot strip Plaintiff of its constitutional standing to sue for infringement. *Id.*

**E. Defendants' Bald Attempt to End Run Discovery Practice Should Not be Rewarded**

There is no conspiracy or ill intent here. Plaintiff's counsel have not withheld any documentation or information from either Defendants or Defendants' counsel. Quite the contrary: this case is progressing despite Defendants' efforts to bog it down. The Parties are in the midst of several discovery disputes, but all arise from discovery served by Plaintiff. Defendants complain about Plaintiff's failure to provide documents, but to-date, Defendants have served zero discovery requests upon Plaintiff. And during the Parties' L.R. 37-1 conference Plaintiff's counsel already referenced publicly available assignment materials that Plaintiff had recorded with the USPTO (for other Asserted Patents, and for the challenged patents-in-suit, *e.g.*, Dkt. 101-2 at 11–15; Dkt. 101-2 at 17–21; Dkt. 101-2 at 23–28) and informed Defendants' counsel that the underlying assignment documents were executed in the course of the founders/inventors' employment and not of the nature typically filed in the USPTO. *See* Dkt. 101-2 at 6; Kempner Decl. ¶ 10.

Defendants have pointed to no authority, and can provide no basis for demanding Plaintiff produce materials on demand, much less confidential employment documents, to Defendants on their say so and outside of the formal discovery process. Plaintiff contemplated producing the documents in question as exhibits to this Opposition, but: one, the documents are not needed and would be merely duplicative as the already-

publicly available assignments on their face are sufficient; and two, producing the documents here would be rewarding Defendants' exceptional conduct allowing them to circumvent the rules (including potentially, procedural protections otherwise available to Plaintiff) all while they have refused to respond to a single properly served interrogatory. Rather than rewarding Defendants for their attempted runaround of the Court's procedures and the Federal Rules, counsel for Plaintiff has confirmed the existence of the documents that form the basis of the recorded assignments, and confirmed they contain "I hereby assign" language. *See* Kempner Decl. ¶¶ 10, 12.

Instead of serving discovery, Defendants' counsel has filed this trumped up motion to dismiss. Defendants have failed to meet the substantive elements for the extreme relief of termination of the case that they seek. Defendants have not provided any reasonable justification for this relief.

As a result of this additional unnecessary motion practice, Plaintiff feels compelled to seek the Court's assistance. Defendants' counsel's actions evidence that despite Plaintiff's efforts to move the case forward (including providing draft settlement terms at Defendants' request, proposing mediation dates before the parties' agreed-to mediator, preparing for mediation only for it to be canceled on short notice, and coordinating for a special master for discovery), the Defendants have no real intention of complying with this Court's orders, substantively and properly answering discovery in this case, and appearing in Court to address their infringing actions. It has become clear that Defendants appear to be attempting to weaponize the Court's resources to further waste the Court and Plaintiff's time and resources. For these reasons, Plaintiff also respectfully requests that the Court grant it attorneys fees and costs for responding to Defendants' Motion to Dismiss.

## III. CONCLUSION

Nothing in the record suggests that anyone other than Plaintiff is the rightful

owner of the Asserted Patents: the face of the patents, prosecution history, and publicly available assignment records at the USPTO all name Plaintiff P&P Imports LLC as the applicant for and owner of these patents. A slightly deeper reading of the available materials confirms the same. Plaintiff possessed legal title to the patent-in-suit at the time this action was commenced via the automatic operation of the "hereby assign" provision in the governing employment-related documents. The subsequent confirmatory documents merely recorded transfers that were already legally complete. Plaintiff has fully satisfied all constitutional and statutory standing requirements. For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss and award Plaintiff its costs and fees for opposing Defendants' Motion.

Respectfully Submitted,

Dated: September 28, 2026

*/s/Casey H. Kempner*_______________

Casey H. Kempner
CKempner@pandpimports.com
Jiaxiao Zhang
jzhang@pandpimports.com
**P&P Imports LLC**
Attorneys for PLAINTIFF-COUNTERDEFENDANT, P&P IMPORTS LLC

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitation of L.R. 11.6-1 and contains no more than 4,287 words, excluding the items exempted by Local Civil Rule 11-6.1.

Respectfully Submitted,

Dated: September 28, 2026

*/s/Casey H. Kempner*______________

Casey H. Kempner
CKempner@pandpimports.com
Jiaxiao Zhang
jzhang@pandpimports.com
**P&P Imports LLC**
Attorneys for PLAINTIFF-COUNTERDEFENDANT, P&P IMPORTS LLC