CASEY H. KEMPNER (SBN: 272149)
E-Mail: CKempner@pandpimports.com
JIAXIAO ZHANG (SBN: 317927)
E-Mail: JZhang@pandpimports.com
**P&P IMPORTS LLC**
17352 Derian Ave
Irvine, CA 92614
Telephone: (949) 734-6892

MARC E. HANKIN (SBN: 170505)
E-Mail: Marc@hpl.law
**HANKIN PATENT LAW**,
A Professional Corporation
11414 Thurston Cir
Los Angeles, CA 90049
Tel: (310) 979-3600

Attorneys for PLAINTIFF and COUNTERDEFENDANT,
**P&P Imports LLC**

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

P&P Imports LLC,

Plaintiff

v.

Vevor Store LLC; Vevor Technology LLC; Vevor Technology Ltd.; Vevor Corporation; Vevor Equipment Inc.; Sanven Corporation; Sanven Technology Ltd.; Shanghai MuXinMuYe Youxiangongsi; Shanghai LEILEI E-Commerce Co., Ltd.; Shanghai SIJIE E-Commerce Co., Ltd.; Bozhou LEIKEYOU Technology Co., Ltd.; DOES 1 through 10, inclusive,

Defendants.

Vevor Store LLC, Vevor Technology LLC, Sanven Corporation and Sanven Technology Limited;

CounterPlaintiffs,

v.

P&P Imports LLC;

CounterDefendant.

CASE No. 8:25-cv-02494-DOC-DFM

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

Hearing Date: December 7, 2026.
Time: 8:30 a.m. Courtroom: 10A.
Judge: Hon. David O. Carter.

Referred to: Special Master Scott R. Miller (Dkt. 113)

## Table of Contents


I. INTRODUCTION .......... 2

II. STATEMENT OF FACTS .......... 3

A. Plaintiff's Patented Football Net Designs. .......... 3

B. The Accused Football Nets .......... 5

C. Defendants' Notice and Written Admission .......... 7

D. Defendants' Answers and the Motion .......... 7

III. LEGAL STANDARD .......... 8

A. Rule 12(c) .......... 8

B. Pleading Design Patent Infringement .......... 9

IV. ARGUMENT .......... 10

A. Defendants' Feature-by-Feature Checklist Misapplies the Ordinary Observer Test. .......... 10

B. Viewed as a Whole, the Accused Football Nets Plausibly Create the Same Overall Visual Impression as the Claimed Designs. .......... 11

C. Courts in This District Have Denied Dismissal Despite Design Differences Like Those Defendants Assert. .......... 13

D. Defendants' Asserted Differences Rest on Disclaimed Features, Mischaracterizations, and Immaterial Details .......... 16

1. Disclaimed triangles cannot distinguish the '933 and '985 Patents .......... 16

2. Disclaimed pockets and frame cannot distinguish the '355 Patent. .......... 17

3. Defendants rely on frame details only for the '933 Patent .......... 17

4. Defendants mischaracterize the claimed designs .......... 18

5. The alleged remaining differences are minor structural

details. ..... 18

E. The Motion Compares Only Fragments of the Claimed Designs and the Accused Product. ..... 19

F. Defendants' Authorities Do Not Support Dismissal Here. ..... 19

1. Most of Defendants' cases were decided on a full record. ..... 19

2. Defendants' Federal Circuit pleading-stage cases are inapposite ..... 20

3. Other cited cases undercut the Motion ..... 20

4. Defendants' own brief concedes closeness ..... 20

5. Defendants cannot skip the prior-art step ..... 21

G. Defendants' Own Pleadings and the Scheduling Order Confirm That Non-Infringement Cannot Be Decided Now ..... 21

H. Alternatively, the Court Should Grant Leave to Amend ..... 22

V. CONCLUSION ..... 23

# TABLE OF AUTHORITIES

## Cases

*Benebone LLC v. Pet Qwerks, Inc.*, No. 8:20-cv-00850-AB (AFMx), 2020 WL 8732321 (C.D. Cal. Sept. 3, 2020) ........ 11, 15

*Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1287 (Fed. Cir. 2002).... 10

*Colida v. Nokia, Inc.*, 347 F. App'x 568, 570 (Fed. Cir. 2009)........ 21

*Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, 942 F.3d 1119, 1130–31 (Fed. Cir. 2019)........ 18

*Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1378 (Fed. Cir. 2002) 17, 20

*Converse Inc. v. Steven Madden, Ltd.*, No. 20-cv-11032-NMG, 2021 WL 3293624, slip op. at 7 (D. Mass. Aug. 2, 2021)........ 21

*Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303–04 (Fed. Cir. 2010) 3, 11, 12, 13

*Curver Luxembourg, SARL v. Home Expressions Inc.*, 938 F.3d 1334, 1336, 1340–43 (Fed. Cir. 2019)........ 21

*Deckers Outdoor Corp. v. J.C. Penney Co.*, 45 F. Supp. 3d 1181, 1186 (C.D. Cal. 2014) ........ 10, 15

*Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679–80 (Fed. Cir. 2008) .3, 9, 11, 20, 22

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ........ 24

*Enerlites, Inc. v. Century Prods. Inc.*, No. SACV 18-839 JVS (KESx), 2018 WL 4859947, at *3 (C.D. Cal. Aug. 13, 2018)........ 10

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1335 (Fed. Cir. 2015) 10, 12, 13, 20

*Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009) ........ 8, 9

*Gorham Co. v. White*, 81 U.S. (14 Wall.) 511, 528 (1871)....................................9, 14

*Great Neck Saw Mfrs., Inc. v. Star Asia U.S.A., LLC*, 727 F. Supp. 2d 1038, 1041 (W.D. Wash. 2010), *aff'd*, 432 F. App'x 963 (Fed. Cir. 2011) ................................20

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989) ....................................................................................................9, 14, 19, 20

*Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d 1357, 1362–64 (Fed. Cir. 2013) ................9

*Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–09 (9th Cir. 1992) .........24

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999–1003 (9th Cir. 2018) ..........9

*Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc)..................................24

*Minka Lighting, Inc. v. Craftmade Int'l, Inc.*, 93 F. App'x 214 (Fed. Cir. 2004)........21

*Nikola Corp. v. Tesla, Inc.*, No. 3:18-cv-07460-JD, slip op. at 4 (N.D. Cal. Sept. 9, 2020) ...................................................................................................11, 14

No. 2023-2427, 2026 WL 261890 (Fed. Cir. Feb. 2, 2026) (Moore, C.J., dissenting), *reh'g en banc denied* (Fed. Cir. Aug. 11, 2026)...................................................12

*Pac. Coast Marine Windshields Ltd. v. Malibu Boats, LLC*, 739 F.3d 694, 702 (Fed. Cir. 2014) ..............................................................................................23

*Performance Designed Products LLC v. Mad Catz, Inc.*, No. 16cv629-GPC(RBB), 2016 WL 3552063 (S.D. Cal. June 29, 2016) ..................................................21

*PUMA SE v. Brooks Sports, Inc.*, No. 2:23-cv-00116-LK, slip op. at 25 (W.D. Wash. May 14, 2024)..............................................................................................14

*Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1295 (Fed. Cir. 2010)........2, 10, 20

*SATA GmbH & Co. KG v. Cent. Purchasing, LLC*, No. CV 20-02131 DDP (JPRx), slip op. at 9–10 (C.D. Cal. Mar. 12, 2021) ..................................................10

*Vigil v. Walt Disney Co.*, 232 F.3d 911 (Fed. Cir. 2000) (table).................................21

*Wing Shing Prods. (BVI) Co. v. Sunbeam Prods., Inc.*, 665 F. Supp. 2d 357 (S.D.N.Y. 2009) .....................................................................................................21

**Rules**

37 C.F.R. § 1.152 ........................................................................................................ 18

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE:**

Plaintiff P&P IMPORTS LLC ("Plaintiff") opposes Defendants' Motion for Judgment on the Pleadings (Dkt. 112, "Motion for Judgment") for the following reasons: Defendants' Motion for Judgment on the Pleadings (1) is procedurally improper and (2) rests entirely on flawed and incorrect readings of governing design patent case law.

Despite answering Plaintiff's First Amended Complaint, Defendants seek to dismiss the design patent claims based almost entirely on an incorrect reading of Plaintiff's patents. For example, under Federal Circuit precedent, designs should be compared as a whole. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679–80 (Fed. Cir. 2008). By contrast, Defendants' Motion attempts to differentiate their infringing products from Plaintiff's claimed designs by identifying *de minimis* elements in their infringing products, while ignoring the designs as a whole. In addition to that error, Defendants appear to beg the Court to ignore that at least some of their identified *de minimis* elements correspond to figure elements represented in dashed lines in Plaintiff's patents (i.e., explicitly disclaimed subject matter) and instead interpret such features, improperly, as part of Plaintiff's claimed designs. And, finally, Defendants have to-date refused to answer any interrogatories or meaningfully and properly respond to written and deposition discovery, which has prevented Plaintiff from understanding how exactly Defendants seek to interpret Plaintiff's asserted patent claims.[1]

---

[1] As Plaintiff reminded Defendants in the Parties' L.R. 37-1 conference, all of this, including all bases for their present Motion, is improper, particularly because Defendants appear to be proffering unfounded and unsupportable legal theories solely to prevent discovery from occurring in this case. Defendants have no right to bypass the Court's procedures and discovery processes by misusing motion practice to hobble the discovery process, all while failing to comply with the Court's and Federal rules and wasting Plaintiff's and the Court's resources on a procedurally and legally improper and unsupported motion.

The Court should deny Defendants' motion.

## I. INTRODUCTION

Defendants ask the Court to decide, on the pleadings and *without any factual record*, a question the Federal Circuit calls a question of **fact**: whether an ordinary purchaser of football training nets would find Defendants' nets substantially the same as Plaintiff's patented designs. *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1295 (Fed. Cir. 2010). Dismissal at this stage is reserved for the rare case where the designs

| | | |
|---|---|---|
|  |  |  |
| '933 Patent Figure 1 | '985 Patent Figure 1 | '355 Patent Figure 1 |

are so plainly dissimilar that infringement is implausible. This is <u>not</u> that case.

Placed side by side, the claimed designs and the Accused Football Nets share the same overall visual impression. Plaintiff's patents relate to sports nets, and the Defendants copied those nets. Both the Accused Football Nets and the '933 Patent have substantially identical frame construction, arrangement of side sleeves, top and side trim, include the same shape target holes, and the same base netting, which results in a substantially similar overall look and appearance, despite there being demonstrably countless other ways to market football passing nets without copying Plaintiff's designs. Similarly, both the Accused Football Nets and the '985 Patent have substantially identical arrangements of side sleeves, top and side trim, include the same shape target holes, and the same base netting, which again results in a substantially similar overall

look and appearance, where *again* there are countless other ways to market football passing nets without copying Plaintiff's designs. And, both the Accused Football Nets and the '355 Patent have substantially identical arrangement of side sleeves, top and side trim, same base netting, used triangle target identifiers, which, again, all results in a substantially similar overall look and appearance. Ultimately, each is a mesh target net suspended in a bowed frame. Each presents framed catching pockets: two upper pockets at the left and right and a third, lower pocket centered between them. Each marks its targets with downward-pointing triangles. Defendants' nets reproduce that three-pocket design, in substantially the same positions on a net, that is supported by an indistinguishable frame, with the same trim, but simply tacks on two pockets below it. Therefore, the Accused Football Nets infringe Plaintiff's claimed designs.

Defendants reach the opposite conclusion *only by* abandoning the governing test. Instead of comparing the designs as a whole, and asking if a consumer would view these designs as substantially the same, Defendants break the designs into an eight-item checklist of details: the number of frame connectors, the bend of a ground bar, whether the netting touches the frame at the corners, and the direction a net sags. The Federal Circuit has repeatedly rejected that method, e.g., in *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679–80 (Fed. Cir. 2008) (*en banc*); *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303–04 (Fed. Cir. 2010). Worse, several of Defendants' "differences" rest on features Plaintiff's patents expressly disclaim, or on features the patents depict but Defendants misdescribe.

At most, Defendants identify points on which reasonable observers could disagree. That is a fact dispute, and it cannot be resolved under Rule 12(c). As such, the present Motion should be denied. However, if the Court finds any claim deficient under Defendants' standard, Plaintiff respectfully requests leave to amend.

## II. STATEMENT OF FACTS

### A. Plaintiff's Patented Football Net Designs.

Plaintiff owns U.S. Design Patent Nos. D900,933 (the "'933 Patent"), D960,985 (the "'985 Patent"), and D1,003,355 (the "'355 Patent") (together, the "Asserted Patents"). FAC (Dkt. No. 22) ¶¶ 52–56; Dkt. No. 22-1, Exs. 5–7. Each claims an ornamental design for a football training net. Id. The '933 Patent is titled "Football Toss Trainer," and the '985 and '355 Patents are each titled "Toss Trainer." FAC ¶¶ 52, 54–55. Plaintiff sells the GoSports® Football Throwing Net, which practices all three patents, through retailers including Amazon.com. *Id.* ¶¶ 57–59. Plaintiff and Defendants compete directly in the sale of sporting goods. *Id.* ¶ 26. The FAC is verified.

The three patents claim related designs, differing in which elements are shown in solid (claimed) lines and which are represented in broken (unclaimed) lines. This is summarized in the table below:

| Patent | Claimed (solid lines) | Unclaimed (broken lines) |
|---|---|---|
| '933 Patent | Net, frame with two uprights, front and rear legs, top and bottom trim, side sleeves, and three targets with one in each upper corner and one about the center | Four triangles: one beneath each pocket and one at top center (Mot. at 6) |
| '985 Patent | Net, the trim of three targets with one in each upper corner and one about the center, top and bottom trim | Triangles and remaining frame (Mot. at 10) |
| '355 Patent | Net, three triangular pocket indicators, with one in each upper corner and one about the center, top and bottom trim. | Pockets, pocket trim, and remaining frame (Mot. at 8) |

Each Asserted Patent claims "[t]he ornamental design for a [football] toss trainer, as shown and described" and depicts that design in eight figures: perspective, front, back, top, bottom, and both side views. Dkt No. 22-1, Exs. 5–7. The '985 and '355

Patents are continuations of the '933 Patent. Dkt. No. 22-1, Exs. 6–7. Defendants' Motion reproduces *only Figure 1 and the front view in Figure 3 of each patent*. Mot. at 2, 7, 9, 10. Plaintiff infers that Defendants have purposefully omitted the side, top, and bottom views because those figures would show how substantially identical the designs are, when viewed as a whole, in hopes the Court would ignore that consumers may view these nets quickly, in passing, and at an angle or from the side, such as from the sideline of a football training field (a common use of Plaintiff's nets). Plaintiff's patent claims are against Defendant's products, not Defendants' selection of listing imagery–these patent claims should not be substantively confused with, or misconstrued as similar to, Plaintiff's copyright claims.

**B. The Accused Football Nets**

The FAC accuses three Vevor football nets: the 8x8 ft (Amazon ASIN B0CN6CQ7GZ), 7x7 ft (Amazon ASIN B0CN6D7RQX), and 6x6 ft (Amazon ASIN B0CN6CKH4G) models (the "Accused Football Nets"). FAC ¶¶ 224, 232, 240. Defendants concede the three are identical except for size. Mot. at 2–3.

Each Accused Football Net is a mesh target net held in a frame with outwardly bowed side poles. Mot. at 2, 7. Each Accused Football Net has five framed pockets set into the net. Three of the pockets, marked "1," "2," and "3," sit at the upper left, upper right, and center, as depicted in the Asserted Patents. Two more, marked "4" and "5," are tacked on at the lower left and lower right. *Id.* at 7. Each of the accused products includes a downward triangle pocket indicator for each of its targets. *Id.*



P&P's '933 Patent



Vevor 8x8ft Football Net, B0CN6CQ7GZ



P&P's '985 Patent




Vevor 7x7ft Football Net, B0CN6D7RQX



P&P's '355 Patent



Vevor 6x6ft Football Net, B0CN6CKH4G

As seen above, and alleged in the Complaint, from a side by side comparison of patent images and images taken from Vevor's infringing listings, the Accused Football Nets are of nearly identical construction, framing, size, arrangement, trim, and taken as a whole to an ordinary observer, are "substantially similar" to Plaintiff's patented design and "appear identical to the design claimed" by each Asserted Patent. FAC ¶¶ 99, 224, 232, 240. The verified First Amended Complaint further alleges that Defendants sold

the Accused Football Nets "using P&P's GoSports® Football Net patented design," with the result that "potential customers associated" P&P's net with the inferior quality of Defendants' Accused Football Nets . *Id.* ¶¶ 100–102. Defendants sell the Accused Football Nets on Amazon.com, Vevor.com, HomeDepot.com, Lowes.com, and other online marketplaces. *Id.* ¶ 90.

**C. Defendants' Notice and Written Admission**

On February 28, 2025, P&P sent Defendants a cease-and-desist letter that identified each of the three Accused Football Nets by its Amazon listing and set each beside the patented design. FAC ¶ 31; ECF No. 22-1, Ex. 001 at 1, 4–5. Defendants "acknowledged the noticed infringements in writing" and agreed to stop selling the products, but then without notice relisted the infringing nets and expanded their infringing product lines. FAC ¶¶ 32–34. Defendants admit that they received the letter and responded to it. Dkt. No. 67 ¶¶ 31–32; Dkt. No. 91 ¶¶ 31–32; Dkt. No. 92 ¶¶ 31–32.

P&P sent a second cease and desist letter on July 23, 2025 (FAC ¶ 37), which"expressly noticed Vevor that Vevor had expanded its product lines to include many more infringing products and listings, and P&P noted to Vevor that such behavior was willful and exceptional conduct, particularly in light of P&P's First Cease and Desist Letter and Vevor's express promises to cease infringing sales." FAC ¶ 40. Subsequently "Vevor [] ceased direct communications, refused to provide P&P sales and other information regarding the infringing products, and [took] no steps to resolve these matters since Vevor sent its written communication admitting infringement and promising to cease infringing sales." FAC ¶ 41. As of the filing of the FAC, and even today, "Vevor continues to sell products that infringe P&P's intellectual property." *Id.* The FAC also alleges, on information and belief, that Defendants operate for the purpose of copying popular American products. *Id.* ¶ 27.

**D. Defendants' Answers and the Motion**

All eleven Defendants have answered the FAC. Dkt. Nos. 67 (Vevor Store LLC, Vevor Technology LLC, Vevor Technology Ltd., Sanven Corporation, and Sanven Technology Ltd.; filed April 6, 2026, after answers at Dkt. Nos. 53 and 58); Dkt. No. 91 and 92 (the remaining six Defendants; filed June 15, 2026). Each Answer denies infringement and pleads that each Asserted Patent is invalid over dozens of identified prior-art references. Dkt. Nos. 67, 91, 92, Second Defense ¶¶ 6–8. Each Answer pleads that amendments and arguments made during prosecution limit the scope of each patent. *Id.*, Fourth Defense ¶¶ 11–13. And each Answer counterclaims for declarations of non-infringement, invalidity, and unenforceability of each Asserted Patent. *Id.*, Countercls. VII–XV. P&P has answered all of the counterclaims. Dkt. Nos. 68, 96, 97. Fact discovery closes January 20, 2027, the motion cut-off is March 1, 2027, and trial is set for April 20, 2027. Dkt. No. 77 at 1.

On November 9, 2026, Defendants moved under Rule 12(c) for judgment of non-infringement on the Sixth, Seventh, and Eighth Claims for Relief, without leave to amend. Dkt. No. 112. Defendants rely on one marketing image of an accused product, compared against a single front-view figure from each patent, and on an itemized list of claimed differences. Mot. at 6–11. In the present Motion, Defendants offer no prior art, presumably because such proffer would likely only serve to highlight the substantial similarities between Plaintiff's patents and the Accused Football Nets.

On November 12, 2026, the Court referred the Motion to Special Master Scott R. Miller for a Report and Recommendation. Dkt. No. 113; *see* Dkt. No. 93.

## III. LEGAL STANDARD

### A. Rule 12(c)

Judgment on the pleadings is proper only when there is no issue of material fact in dispute and the moving party is entitled to judgment as a matter of law. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). The moving party must clearly establish on the face of the pleadings that no material issue of fact remains. *Hal Roach Studios, Inc.*

*v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989). The non-movant's allegations are accepted as true, and the movant's contrary allegations are assumed false. *Id.* All reasonable inferences are drawn in the non-movant's favor. *Fleming,* 581 F.3d at 925. A court may consider documents incorporated by reference or judicially noticed, but may not use them to resolve factual disputes against the plaintiff. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999–1003 (9th Cir. 2018).

**B. Pleading Design Patent Infringement**

The bar for pleading design patent infringement is exceptionally low. A complaint suffices if it identifies the patent, the accused product, the means by which it infringes, and the governing law. *Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d 1357, 1362–64 (Fed. Cir. 2013). Infringement is determined by a visual comparison of the claimed design and the accused article, applying the ordinary observer test. *Id.* at 1363; *Egyptian Goddess*, 543 F.3d at 678.

Under that test, a design is infringed if, "in the eye of an ordinary observer, giving such attention as a purchaser usually gives," the two designs are substantially the same. *Gorham Co. v. White*, 81 U.S. (14 Wall.) 511, 528 (1871). Differences are "evaluated in the context of the claimed design as a whole, and not in the context of separate elements in isolation." *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1335 (Fed. Cir. 2015). Design patent infringement is a question of fact. *Richardson*, 597 F.3d at 1295; *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1287 (Fed. Cir. 2002).

For that reason, courts in this Circuit only dismiss design patent claims at the pleading stage where "the claimed design and accused product are <u>*so plainly dissimilar that it is implausible*</u> that an ordinary observer would confuse them." *SATA GmbH & Co. KG v. Cent. Purchasing, LLC*, No. CV 20-02131 DDP (JPRx), slip op. at 9–10 (C.D. Cal. Mar. 12, 2021) (ECF. No. 54) (emphasis added) (*quoting Enerlites, Inc. v. Century Prods. Inc.*, No. SACV 18-839 JVS (KESx), 2018 WL 4859947, at *3 (C.D.

Cal. Aug. 13, 2018)); *see also Deckers Outdoor Corp. v. J.C. Penney Co.*, 45 F. Supp. 3d 1181, 1186 (C.D. Cal. 2014) (denying motion to dismiss design patent claim). As one court explained in denying such a motion, the principle that design infringement is "a quintessential fact question" applies equally at the pleading stage. *Nikola Corp. v. Tesla, Inc.*, No. 3:18-cv-07460-JD, slip op. at 4 (N.D. Cal. Sept. 9, 2020) (ECF No. 127).

## IV. ARGUMENT

### A. Defendants' Feature-by-Feature Checklist Misapplies the Ordinary Observer Test.

The ordinary observer test asks whether the overall visual impression of the accused design is substantially the same as the claimed design. *Egyptian Goddess*, 543 F.3d at 678. The en banc Federal Circuit specifically warned that reducing a design to a detailed verbal description risks placing undue emphasis on particular features and diverting attention from the design as a whole. *Id.* at 679–80. In the context of this Motion, Plaintiff need not prove infringement; Defendants must unequivocally establish that their products *are so plainly dissimilar that it is implausible* that any consumer would see them as the same. *Benebone LLC v. Pet Qwerks, Inc.*, No. 8:20-cv-00850-AB (AFMx), 2020 WL 8732321 (C.D. Cal. Sept. 3, 2020) (ECF No. 39 at 7)

*Crocs* applied that warning to reverse a non-infringement finding: the Commission there relied on verbal details of the patented shoe design, such as a strap "of uniform width"and evenly spaced holes. 598 F.3d at 1302–04. The Federal Circuit held that those minor details distracted from the overall impression, which side-by-side comparison showed to be the same. *Id.* Differences must be weighed "in the context of the claimed design as a whole, and not in the context of separate elements in isolation." *Ethicon*, 796 F.3d at 1335. Minor differences between a patented design and an accused design do not prevent a finding of infringement. *Litton Sys., Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1444 (Fed. Cir. 1984), abrogated on other grounds by *Egyptian Goddess*,

543 F.3d 665.

Defendants' Motion is built on exactly the approach these cases reject (e.g., attempting to force Plaintiff to prove infringement while improperly diverting focus away from the design as a hole and only on the elements it can allege as distinguishable).. For each patent, Defendants focus on only partial front views and supply a numbered list of verbal distinctions, up to eight per patent, and then count them. Mot. at 7 ("at least these eight substantial differences"), 9 ("four"), 10 ("five"). The list includes the number of connectors joining the net to a ground bar, whether that bar is straight or bent, and whether the netting touches the frame at each corner. *Id.* at 7. Few purchasers of a football net would notice these details, and none of these details address or define the net's overall appearance. A "spot the differences" exercise belongs in Highlights Magazine, and is not the test for patent infringement.

The Federal Circuit's Chief Judge recently cautioned against exactly this framing. Dissenting in *Range of Motion Products, LLC v. Armaid Co.*, Chief Judge Moore explained that asking whether designs are "plainly dissimilar," rather than whether they are substantially similar, invites the factfinder to hunt for differences and lose sight of overall similarity. No. 2023-2427, 2026 WL 261890 (Fed. Cir. Feb. 2, 2026) (Moore, C.J., dissenting), *reh'g en banc denied* (Fed. Cir. Aug. 11, 2026). Even the judges who voted against rehearing defended the "plainly dissimilar" inquiry only where no genuine factual dispute exists, as on the summary judgment record there. *Id.* (Aug. 11, 2026) (Cunningham, J., concurring in denial of rehearing *en banc*). The Federal Circuit panel majority likewise affirmed non-infringement only on summary judgment, after the district court construed the claim and factored out functional elements on a developed record. *Id.* (Feb. 2, 2026).

No such record exists here, and this Motion is not for summary judgement.

**B. Viewed as a Whole, the Accused Football Nets Plausibly Create the Same Overall Visual Impression as the Claimed Designs.**

Compared as wholes, the claimed designs and the Accused Football Nets share the features that define their appearance:

- a mesh target field that fills the frame;
- a frame that bows outward around the net;
- framed, recessed catching pockets set into the net;
- two upper pockets at the left and right, and a third pocket centered below;
- thin trim that generally bounds the net; and
- a downward-pointing triangle marking each target.

The pocket configuration in each of the claimed designs is reproduced in substantially the same locations on the Accused Football Nets —as is the frame shape, the way the net is held, the trim sections, and the other elements that Defendants repeatedly ignore. Defendants attempt to focus on only the two lower pockets in their products and call the accused arrangement an "X." Mot. at 7. But that only concedes that a majority of their products' pockets are in the exact placement shown in Plaintiff's patents, because the top of an "X" is identical to a "V," so Defendants' nets infringe.

Whether an ordinary observer would regard the additions of additional pockets underneath the "V" as transforming the design, or as minor variations on the same design, is precisely the kind of judgment a factfinder must make. *Crocs*, 598 F.3d at 1303–04; *Ethicon*, 796 F.3d at 1335. The Accused Football Nets are thus not so plainly dissimilar to Plaintiff's patents that the Court should foreclose the public from making that call, especially in light of the substantial other copying alleged in this case.

The identity of the ordinary observer matters too. That observer is the principal purchaser of the article, and a person of "ordinary acuteness." *Ethicon*, 796 F.3d at 1337 (quoting *Gorham*, 81 U.S. at 528). Here, that is a player, parent, or coach buying a backyard football training net, who may have seen the design online or on the field and then seeks to buy from online listings such as those on Amazon.com. FAC ¶¶ 58, 90. What such a purchaser notices, and how much attention the purchaser gives, are

questions of fact that cannot be answered on the pleadings.

At minimum, the verified FAC makes infringement plausible. It identifies the patents and accused products, sets each patent's figures beside the accused nets, and alleges that the designs are substantially similar. FAC ¶¶ 99, 222–245. It also alleges that potential customers associated P&P's patented nets with Defendants' nets, and that Defendants admitted infringement in writing after receiving notice. *Id.* ¶¶ 31–36, 100–102. That is all Rule 8 requires. *Hall*, 705 F.3d at 1363–64. The court in *Nikola* denied a motion to dismiss on a similar showing, relying on side-by-side comparisons and an allegation that an industry participant thought the accused truck "looked like" the patented design, and rejecting the defendant's invitation "to eyeball the visual comparisons" and declare them plainly dissimilar. *Nikola*, slip op. at 3–4.

**C. Courts in This District Have Denied Dismissal Despite Design Differences Like Those Defendants Assert.**

Courts in this District have repeatedly declined to resolve design patent infringement on the pleadings where, as here, the defendant points to differences between the claimed design and the accused product. Courts have denied such motions "even when the differences are arguably more than minor," because "[r]esolution at the pleading stage is reserved for obvious cases where the dissimilarities clearly render the designs (as a whole) dissimilar." *PUMA SE v. Brooks Sports, Inc.*, No. 2:23-cv-00116-LK, slip op. at 25 (W.D. Wash. May 14, 2024). Three decisions from this District illustrate this point. In each, the differences were at least as visible as those Defendants identify here.

In *Deckers*, the defendant analyzed the design differences between its accused boot and the plaintiff's patented three-button boot design. *Deckers Outdoor Corp. v. J.C. Penney Co.*, 45 F. Supp. 3d 1181, 1186–87 (C.D. Cal. 2014). As the court's own comparison shows, the accused boot had a much shorter shaft and a different button arrangement than the claimed design. *Id.*, Fig. 1 (reproduced below). The court

nonetheless held that it is "improper in a situation like this one to contend that a plaintiff has failed to allege design-patent infringement based on a comparison of the subject designs, since the Court must accept all factual allegations as true." *Id.* That court found "a sufficient visual similarity to at least render infringement . . . plausible," and stated plainly that the plaintiff "had to do no more." *Id.*

| **Deckers's Design Patents** | **Accused Products** |
|---|---|
|  |  |
| D616,189 | Arizona Carmen Girls Boot |

**Figure A.** *Deckers*, No. 2:14-cv-02565-ODW, ECF No. 30 at 8 (Fig. 1)

In *Benebone*, the defendant highlighted ornamental features of its accused chew toy that it claimed were dissimilar from the patented designs. *Benebone LLC v. Pet Qwerks, Inc.*, No. 8:20-cv-00850-AB (AFMx), 2020 WL 8732321 (C.D. Cal. Sept. 3, 2020) (ECF No. 39 at 7). The court acknowledged that "[t]he designs are not identical—for example, the BarkBone Stick has three-pronged ends with slight tapering, whereas the 'D400 and 'D686 Patents present two-pronged ends with no tapering—but identity is not necessary to allege, let alone prove, design patent infringement." *Id.* at 8. Even though the defendant had presented prior-art designs with three-pronged ends, the court was "unwilling to conclude at the pleading stage that the extra prong renders the overall design of the BarkBone Stick plainly dissimilar," and it denied the motion. *Id.* at 9. Similarly, Defendants here have added two pockets beneath the patented three-pocket "V" to the Accused Football Nets, just as the accused chew toy added a prong to each

patented end (one end being shown in dashed lines). Such added features did not establish plain dissimilarity in *Benebone*, and it does not here.

U.S. Design Patent No. D870,400




Defendant's Pet Chew Toy




**Figure B.** *Benebone*, No. 8:20-cv-00850-AB, ECF No. 39 at 8.

In *Puma*, the defendant argued that the design patent claim failed because "other figures of the '288 Patent reveal dissimilarities in the designs," pointing "specifically to a trapezoidal figure above the heel" of the patented sneaker "that is absent from the [accused] Yoki Sneaker." *Puma SE v. Forever 21, Inc.*, No. CV17-2523 PSG (Ex), 2017 WL 4771004 (C.D. Cal. June 29, 2017) (ECF No. 61 at 5). The court rejected that argument because "minor dissimilarities will not defeat a design patent infringement claim if, in consideration of the whole design, an ordinary observer views them as substantially the same." *Id.* (citing *Crocs*, 598 F.3d at 1303). It held that allegations of substantial similarity in the overall design were "sufficient at this stage of proceedings and do not warrant dismissal of [the] design patent claim," and it denied the motion. *Id.* at 5–7. Defendants' arguments here, that the Accused Football Nets differ from the '933 Patent in the number of frame connectors, the bend of the ground bar, and whether the netting reaches each corner (Mot. at 7), are the same kind of argument and fail for the same reason.

| Plaintiff's Design (FIG 4, '288 Patent) | Defendant's "Yoki Sneakers" |
|---|---|
|  FIG. 4 |  |

**Figure C.** *Puma*, No. 2:17-cv-02523-PSG-E, Court's order (ECF No. 61 at 4–5, referencing FAC, ECF No. 13 at 6).

Defendants' Motion asks the Court to do what these courts declined to do: resolve a visual comparison against the plaintiff on the pleadings. The differences Defendants identify, namely added pockets, altered structural details, and the outline of the frame, are no greater than the differences in *Deckers*, *Benebone*, and *Puma*. The present Motion should be denied for the same reason.

**D. Defendants' Asserted Differences Rest on Disclaimed Features, Mischaracterizations, and Immaterial Details.**

Even taken one by one, Defendants' alleged differences do not show plain dissimilarity.

1. <u>Disclaimed triangles cannot distinguish the '933 and '985 Patents</u>

Defendants concede that the triangles in the '933 and '985 Patents are drawn in broken lines and disclaimed. Mot. at 6, 10. *Yet* they *still* list the accused nets' "[t]riangular numbered flags" as a key difference from both patents. *Id.* at 7, 10. A patentee may "show the features in broken lines to exclude those features from the claimed design." *Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1378 (Fed. Cir. 2002); *see* 37 C.F.R. § 1.152; MPEP § 1503.02; *In re Zahn*, 617 F.2d 261, 266–67 (C.C.P.A. 1980) (claim limited to the portion of the article shown in solid lines). The claimed designs thus cover the net and pockets <u>whether or not</u> triangles are present.

Indeed, the patent drawings themselves mark each pocket with a downward-pointing triangle, as the accused nets do; the accused flags simply hang from the top of each pocket rather than below it. A feature that the patent itself depicts as permissible: surrounding environment cannot make the accused design plainly dissimilar. And, when unclaimed subject matter is impermissibly included, Defendants' entire analysis is invalidated, thereby providing an independent basis on which to dismiss Defendants' motion.

The numerals printed on the accused flags fare no better. A factfinder may weigh such markings as one among other differences. *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, 942 F.3d 1119, 1130–31 (Fed. Cir. 2019). Notably, *Columbia* reversed a summary judgment precisely because the district court resolved disputed fact questions that belonged to the jury. *Id.* at 1131–33. How much a numeral printed on a flag matters to an ordinary purchaser is, again, a fact question.

2. Disclaimed pockets and frame cannot distinguish the '355 Patent

The '355 Patent disclaims the pockets and most of the frame. Mot. at 8. What it claims is the net, its top and bottom trim elements, and three downward-pointing triangles arranged in a "V." *Id.* Three of the accused nets' downward-pointing triangles, those numbered 1, 2, and 3, form that same "V." *Id.* at 9. Defendants' alleged distinction, based on the number of pockets, and on where each triangle sits relative to a pocket, depends primarily on the disclaimed pockets. What remains is two additional triangles, printed numerals, the net's outline, and the direction the net drapes. None make the designs plainly dissimilar as a matter of law.

3. Defendants rely on frame details only for the '933 Patent

Defendants concede that the '985 and '355 Patents disclaim the side frame and claim only the trim elements along the top and bottom of the net. Mot. at 8, 10. Consistent with that concession, Defendants' lists for those patents omit the bottom-frame, connector, and corner differences they allege with respect to the '933 Patent.

*Compare id.* at 7, *with id.* at 9, 10. So, Defendants appear to be able to identify disclaimed subject matter (but only in the ’985 and ‘355 Patents, and not in the ’933 Patent). Essentially, Defendants appear to be inconsistently applying their inconsistent reading of the law and within their own legal theory, which belies, if not proves the impropriety of the present Motion.

4. Defendants mischaracterize the claimed designs

Defendants describe each patented net as “[r]ectangular” with “straight sides” and the accused net as “[p]olygonal” with “angled sides.” Mot. at 7, 9, 10. But, Figure 1 of each patent clearly shows a frame that bows outward, just as the frame does in the Accused Football Nets. *Id.* at 2.

Defendants also say the bottom of the patented net curves “downward” while the accused net’s bottom curves “upward.” *Id.* at 7, 9, 10. But “downward” and “upward” are contextual terms that fail to clearly identify material distinctions here specifically, and in infringement analysis generally. Further, a flexible net’s drape depends on, e.g., tension, staking, terrain, and camera angle. Defendants’ comparison sets a patent line drawing against a single photograph of a three-dimensional product taken for marketing. Whether the sides are “straight” or “angled,” and which way the net sags, are all factual disputes. They must be resolved in Plaintiff's favor at this stage. *Hal Roach*, 896 F.2d at 1550; *Khoja*, 899 F.3d at 1003.

5. The alleged remaining differences are minor structural details.

For the ’933 Patent, Defendants add the bend of the ground bar, the number of connectors (two versus three), and whether the netting appears to reach each corner. Mot. at 7. To the extent these differences exist, it’s plainly clear that they are imperceptible to the products and patents as a whole. Further, these features relate to how the frame is assembled and stabilized. A design patent protects ornamental appearance, not functional structure. *Richardson*, 597 F.3d at 1293–94. The elemental details Defendants identify are unlikely to draw a purchaser’s eye, and they do not

change the overall impression of a mesh target net . At minimum, their significance is a question for the factfinder.

**E. The Motion Compares Only Fragments of the Claimed Designs and the Accused Product.**

The ordinary observer compares the claimed design as a whole, as shown in all of the patent's figures, with the accused product's appearance. The comparison accounts for ornamental features visible during the product's normal use. *Contessa*, 282 F.3d at 1378–81 (Fed. Cir. 2002). Defendants instead compare one front-view figure from each patent with one marketing image of the accused net. Mot. at 7, 9, 10. They do not address the patents' remaining figures, and the pleadings contain no record of how the accused net appears from other angles, when set up, or in use, all of which are facts relevant to analyzing infringement.

Also, Defendants ask the Court to rely on a single product photograph that includes color, branding, a carry bag, and other promotional content unrelated to the claimed ornamental design. Mot. at 7. Defendants have not asked the Court to take judicial notice of any other material. As such, any ambiguity in what the photograph shows must be resolved in Plaintiff's favor. *Hal Roach*, 896 F.2d at 1550; *Khoja*, 899 F.3d at 1003. A partial comparison on a partial record cannot establish non-infringement as a matter of law.

**F. Defendants' Authorities Do Not Support Dismissal Here.**

**1. Most of Defendants' cases were decided on a full record.**

*Egyptian Goddess*, *Ethicon*, *Great Neck Saw*, *Minka*, and *Wing Shing* were summary judgment decisions. *Egyptian Goddess*, 543 F.3d at 668–69; *Ethicon*, 796 F.3d at 1335; *Great Neck Saw Mfrs., Inc. v. Star Asia U.S.A., LLC*, 727 F. Supp. 2d 1038, 1041 (W.D. Wash. 2010), *aff'd*, 432 F. App'x 963 (Fed. Cir. 2011); *Minka Lighting, Inc. v. Craftmade Int'l, Inc.*, 93 F. App'x 214 (Fed. Cir. 2004); *Wing Shing Prods. (BVI) Co. v. Sunbeam Prods., Inc.*, 665 F. Supp. 2d 357 (S.D.N.Y. 2009).

*Richardson* followed a bench trial. 597 F.3d at 1291–92. Those cases describe the substantive test. They do not show that the substantive test can be applied to the designs presented in this case on the pleadings. Also, Defendants quote *Minka* for the proposition that a court applies the ordinary observer test "through its own eyes." Mot. at 5. But *Minka* used that phrase in discussing claim construction, not the comparison of designs, and it did so on *summary judgment*. 93 F. App'x at 216.

**2. Defendants' Federal Circuit pleading-stage cases are inapposite**

*Curver* did not turn on a side-by-side comparison of similar designs. The patent there claimed a pattern "for a chair," and the accused products were baskets. A chair vs. a basket—not competing football nets. The Federal Circuit held that the claim language limited the design to the named article of manufacture. *Curver Luxembourg, SARL v. Home Expressions Inc.*, 938 F.3d 1334, 1336, 1340–43 (Fed. Cir. 2019). No such limit is at issue here: the claimed and accused articles are both training nets. *Colida* and *Vigil* are nonprecedential decisions involving designs with no meaningful resemblance. *Colida v. Nokia, Inc.*, 347 F. App'x 568, 570 (Fed. Cir. 2009); *Vigil v. Walt Disney Co.*, 232 F.3d 911 (Fed. Cir. 2000) (table).

**3. Other cited cases undercut the Motion**

Defendants cite *Converse Inc. v. Steven Madden, Ltd.* as "accord." Mot. at 5. But the *Converse* court denied the motion to dismiss after comparing the designs side by side, holding that dismissal was "unwarranted at this early stage in the litigation." No. 20-cv-11032-NMG, 2021 WL 3293624, slip op. at 7 (D. Mass. Aug. 2, 2021). *Performance Designed Products LLC v. Mad Catz, Inc.*, No. 16cv629-GPC(RBB), 2016 WL 3552063 (S.D. Cal. June 29, 2016), did dismiss a design patent claim at the pleading stage, but that court itself recognized that such dismissals are "not necessarily common." *SATA*, slip op. at 11 n.6 (discussing *Performance Designed Prods.*, 2016 WL 3552063, at *5–7).

**4. Defendants' own brief concedes closeness**

In addressing the ’985 Patent, Defendants state that their nets “are not sufficiently distinct from the design of the ’985 Patent.” Mot. at 11. Whatever Defendants intended, a movant that cannot consistently describe its own product as plainly dissimilar has not shown plain dissimilarity as a matter of law.

**5. Defendants cannot skip the prior-art step**

When the designs are not plainly dissimilar, the comparison proceeds in light of the prior art. *Egyptian Goddess*, 543 F.3d at 678. The accused infringer bears the burden of producing that prior art. *Id.* at 678–79. Defendants offer none and concede that a prior-art comparison is unnecessary only if their plain-dissimilarity argument succeeds. Mot. at 11. Because it cannot, for the reasons set forth herein, a proper infringement analysis here requires a factual record, and that factual record does not yet exist.

**G. Defendants’ Own Pleadings and the Scheduling Order Confirm That Non-Infringement Cannot Be Decided Now**

Defendants’ answers show why these claims should proceed through discovery. Every Defendant pleads that each Asserted Patent is invalid over dozens of identified prior-art references. Dkt. Nos. 67, 91, 92, Second Defense ¶¶ 6–8. Every Defendant pleads that each patent's scope is limited by amendments and arguments made during prosecution on specific dates. *Id.*, Fourth Defense ¶¶ 11–13. And every Defendant counterclaims for declarations of non-infringement and invalidity of all three patents. *Id.*, Countercls. VII–XV.

Those pleadings undercut the Motion in three ways. First, Defendants have identified alleged prior art, yet ask the Court to decide infringement without it. Where the designs are not plainly dissimilar, the comparison must be made in light of the prior art, which the accused infringer must produce. *Egyptian Goddess*, 543 F.3d at 678–79. Second, Defendants’ prosecution-history theory raises claim-scope questions that depend on file histories not currently before the Court. *See Pac. Coast Marine Windshields Ltd. v. Malibu Boats, LLC*, 739 F.3d 694, 702 (Fed. Cir. 2014) (prosecution

history may limit the scope of a design patent). Third, granting the Motion would not narrow the case. Defendants' counterclaims put the same patents and the same products at issue, and discovery on them will proceed regardless.

The Court's Scheduling Order points the same way. The Court "will not entertain piecemeal motions for partial summary judgment before the factual record is complete." Dkt No. 77 at 4–5. Fact discovery runs until January 20, 2027, and the motion cut-off is March 1, 2027. *Id.* at 1. To be clear, at the time of submission, Defendants have answered no interrogatories[2], have produced unclear and deficient materials in response to Requests for Production, and largely refused to schedule, provide witnesses for, or even meet and confer on noticed individual 30(b)(1) and corporate 30(b)(6) witness depositions of even the U.S. entities, claiming witnesses do not reside in the United States nor possess valid visas and therefore cannot sit for deposition.

The record is still being meaningly and materially developed. For example, at least unanswered Interrogatory Nos. 1 ("Identify all Persons directly participating in the design, manufacture, sourcing of any Accused Products"), 7 ("For each Accused Product, state and describe how it was first conceived, first designed, first manufactured, first advertised, first offered for sale, and first sold"), 15 ("Identify every complaint, inquiry, customer review, customer communication, or other communications regarding P&P's Products."), 17 ("Identify the individuals, by title and duties, with material decision-making authority as to the Accused Products") ask about the design of the Accused Products.

Defendants' Motion seeks a merits judgment of non-infringement on three of Plaintiff's claims before a factual record exists. The proper time to test these claims is on a complete record, exactly as the Scheduling Order instructs.

**H. Alternatively, the Court Should Grant Leave to Amend**

If the Court finds any claim insufficiently pleaded, it should grant Plaintiff leave

[2] Despite them being served July 20 and August 8, 2026.

to amend. Leave should be granted unless the pleading could not possibly be cured by additional facts. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Because the Scheduling Order's deadline for amendment motions has passed (Dkt. No. 77 at 2), an amendment would also require good cause under Rule 16(b)(4). That standard turns primarily on the diligence of the party seeking amendment. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–09 (9th Cir. 1992). It is met here.

Defendants filed five answers to the FAC between February and June 2026 without challenging the sufficiency of these claims. Dkt Nos. 53, 58, 67, 91, 92. They waited until November 9, five to nine months later, and months after the amendment deadline had passed, to bring this Motion (as Dkt No. 112). Any need to amend would arise only from the Court's ruling, and P&P would move promptly.

Defendants argue that amendment is futile because neither the patents nor the accused nets will change. Mot. at 11–12. That conflates the designs with the allegations about them. Plaintiff can plead additional facts bearing on the ordinary observer's impression, including: (1) photographs of the accused nets from multiple angles and as set up for use; (2) annotated side-by-side comparisons with every figure of each patent; (3) further facts about the ordinary purchaser and the manner of purchase; and (4) particularly after Defendants respond to discovery, specific instances of consumer confusion, such as customer reviews or inquiries, and further facts about Defendants' copying, including the content of Defendants' written response to Plaintiff's cease-and-desist letter. Allegations of this kind support plausibility. *See Nikola*, slip op. at 3. Dismissal without leave to amend would be improper.

## V. CONCLUSION

The Accused Football Nets are all substantially similar to each claimed design: a mesh target net with framed pockets in the same "V" configuration, marked by downward-pointing triangles. Defendants' contrary showing depends on a checklist of

minor details, disclaimed features, and contested characterizations of a single marketing photograph. Whether an ordinary observer would find the designs substantially the same is a question of fact that cannot be resolved on the pleadings, and certainly not using Defendants' improper form of analysis. For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion for Judgment on the Pleadings. In the alternative, Plaintiff requests leave to amend the Sixth, Seventh, and Eighth Claims for Relief.

Respectfully Submitted,

Dated: November 16, 2026

*<u>/s/Casey H. Kempner</u>*_______________

Casey H. Kempner
CKempner@pandpimports.com
Jiaxiao Zhang
jzhang@pandpimports.com
**P&P Imports LLC**
Attorneys for PLAINTIFF-COUNTERDEFENDANT, P&P IMPORTS LLC

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitation of L.R. 11.6-1 and contains no more than 6,976 words (under the 7,000 word limit), excluding the items exempted by Local Civil Rule 11-6.1.

Respectfully Submitted,

Dated: November 16, 2026

*/s/Casey H. Kempner*_______________

Casey H. Kempner
CKempner@pandpimports.com
Jiaxiao Zhang
jzhang@pandpimports.com
**P&P Imports LLC**
Attorneys for PLAINTIFF-COUNTERDEFENDANT, P&P IMPORTS LLC